own property. The attempt to show that his wife derived the property from any other source than from him, utterly failed. The debts set forth in his schedule were, all of them, contracted in 1861. He was married in 1860. His wife had then no property, except some household furniture, of the value of $225, which he purchased and gave to her before their marriage. She has inherited no property since, nor received any from any other person than her husband. In September, 1861, he failed, and made an assignment of all his property for the benefit of his creditors. Since that time he has carried on business as agent for McMullen and for his wife. His wife's furniture was sold in 1864 for $600. The attempt to show that Mrs. Hill had capital enough growing out of the investment of this $600, and the buying of notes on her behalf, prior to the 18th of April, 1867, and the transactions on her behalf with John Grant, in regard to mules, prior to that time, to establish the extensive business which, from and after that date, was done for her by her husband as her agent, is absurd. At that date a bank account was opened in her name with the Ulster County National Bank at Kingston, and her husband's agency for McMullen ceased about the same time. It is quite clear that the capital was really the property of her husband, and was the fruit of the business he had been transacting since he failed in 1861, nominally as agent for McMullen, but really on his own behalf. Mrs. Hill, in her testimony, shows that she knew nothing about what her husband was doing in her name in the way of business, and that she had no connection with it except to sign notes and checks as he brought them to her, filled up and ready to be signed. From April, 1867, to January, 1868, the deposits in the name of Mrs. Hill, in the bank, amounted to nearly $25,000; and Hill testifies that a large amount of her transactions do not appear upon her bank book, that some of the notes he bought for her were discounted at other banks, and that he bought about $50,000 worth of notes, as her agent, and dealt largely in other things as her agent, buying and selling mostly for cash. The house named in the specifications was purchased from Jeremiah Russell for $5,750, in the fall of 1866. Of this amount, $1,750 was paid in cash, being raised on a note signed by Mrs. Hill, and she took a deed of the house, and gave back a mortgage on it for $4,000. But the evidence as to the transaction shows that the purchase was really by her husband, and that the note on which the money was raised to make the cash payment, was paid with his money, if it has been paid. The bankrupt has kept no account of his dealings for his wife, as her agent, and has never rendered to her any account, and she has never paid him, or agreed to pay him, any thing for his services. The case is a plain one for refusing a discharge.

## Case No. 6,484.

### In re HILL.

[7 Ben. 378;[1] 10 N. B. R. 133; 1 Am. Law T. Rep. (N. S.) 421; 20 Int. Rev. Rec. 81.]

District Court, S. D. New York. July, 1874.

PRACTICE — ADJUDICATION — ACT OF BANKRUPTCY.

1. A petition in involuntary bankruptcy was filed in January, 1874. A trial was had before the court, and, on the 18th of March, 1874, a memorandum signed with the initials of the judge, was made by him on the petition, directing that an order of adjudication be entered on the first of the two acts of bankruptcy alleged, which was that the debtor had stopped payment of his commercial paper, and did not resume payment of it within fourteen days. No order of adjudication was entered before the passage of the bankruptcy amendment act of June 22, 1874 [18 Stat. 178], when the creditor applied to have the order of adjudication entered nunc pro tunc as of March 18, 1874. *Held*, that the order could not be so entered.

2. To obtain the entry of the adjudication, the creditor must amend the petition, so as to make it conform to the act of June 22, 1874, both as to the number of creditors joining in it and the act of bankruptcy.

[In the matter of Joseph M. Hill, an alleged bankrupt.]

H. C. Lockwood, for petitioning creditor.
J. D. Reymert, for debtor.

BLATCHFORD, District Judge. The petition in this case, in involuntary bankruptcy, was filed on the 17th of January, 1874. The order to show cause was returnable on the 24th of January. On that day the debtor appeared and filed a denial in the usual form, and demanded a trial by the court, and an order was made referring it to a commissioner, to take the evidence. The commissioner's report of the evidence was filed on the 6th of March, the matter was brought to hearing before the court, and, on the 18th of March, a memorandum, signed by the initials of the judge, was made by him on the petition, directing that an order of adjudication be entered. No such order was entered prior to June 22, 1874, probably for the reason that the petitioning creditor did not desire or procure such order to be entered. I am now asked to sign such an order nunc pro tunc, as of the 18th of March. I do not see how this can be done. The test must be whether a formal order of adjudication has been entered. Until the entry of such formal order, a discontinuance has always been allowed by this court to be entered, if desired by the petitioning creditor. A direction that such order be entered, the order not having been prepared in form, is no more than the decision of the judge. It is not a judgment, or an entry on the files of the court that the court adjudges thus and so. The form of an adjudication of bankruptcy on a creditor's petition is prescribed by form No. 58. Nothing else is an adjudication or an adjudg-

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

ing, and, therefore, the debtor in the present case remained, on the 22d of June, 1874, to "be adjudged a bankrupt" under the provisions of the act of 1874, that is, on such a petition as I have held, in the case of In re Scull [Case No. 12,568], to be the necessary form of petition. The clerk will enter in the present case the like form of order with that directed in the Case of Scull. if either party desires it.

It is proper to say that there are two acts of bankruptcy alleged in the petition. The direction for an order of adjudication was that it should be entered on the first act of bankruptcy alleged. That is an allegation that the debtor, on the 22d of November, 1873 (56 days before the filing of the petition), being a merchant, stopped payment of his commercial paper, and did not resume payment of it within a period of fourteen days. If the petition is to be proceeded with as to such first act of bankruptcy, it must conform to the act of 1874, by averring that the commercial paper was made or passed in the course of the business of the debtor as a merchant, and that he did not resume payment of it within a period of forty days. An amendment to that effect will be allowed to be made within the twenty days allowed for the amendment in regard to the number and amount of creditors.

---

## Case No. 6,485.

In re HILL et al.

[5 Law Rep. 326.]

District Court, S. D. New York. 1842.

INVOLUNTARY BANKRUPTCY— DEFECTIVE PETITION —AMENDMENTS

This was a case of compulsory bankruptcy, and on the day for showing cause why a decree should not pass, exceptions were taken on the part of the debtors to the sufficiency of the proceedings; some of which were merely formal, and some rested on matters of substance.

John Van Vleeck, for petitioners.

P. J. Joachemssen, for bankrupts.

THE COURT decided, that the jurat subscribed by the commissioner need not contain a venue, when it could be sufficiently collected from the deposition itself, that the oath was administered where the officer resides. That if a debt must be due, to found these proceedings, yet a promissory note over due on its face when the petition was sworn to, and actually due by the expiration of the days of grace, at the time the petition was presented to the judge, and was acted on by him, was sufficient to authorize and support the proceedings; that the application to the court, is the time the petition comes into action, and not the date of its subscription or attestation. THE COURT further decided, that the petition on its face must show that an indebtedness above $2000 accrued, against

the parties in their partnership capacity, and that it was not enough that the parties (by name) owed over $2000. It was further decided, that the petition must allege, that the acts of bankruptcy were committed during the continuance of the partnership, and for these defects the petition was disallowed.

On a motion to amend the petition in these particulars, subsequently made by the creditors, THE COURT decided, that this court has under the act [of 1841 (5 Stat. 440)] ability to allow amendments in support of the justice of a case, when by the more rigid rules of practice in bankruptcy in England, like favors might possibly be denied. But even there, as appears from the authorities cited, the refusal to permit amendments, usually rests on a reluctance to vary a commission issued and under execution, or to introduce new foundations for the proceedings, which shall also protect steps already taken without legal justification. THE COURT being satisfied from the affidavits of the creditors and counsel, that the defective averments in the petition, resulted from misapprehension of the counsel, who had the facts properly communicated to him, will permit the amendments to be made on payment of costs.

---

## Case No. 6,486.

In re HILL.

[2 N. B. R. 140 (Quarto, 53).] [1]

District Court, N. D. New York. 1868.

BANKRUPTCY—CONTEMPT— STAY OF PROCEEDINGS.

The bankrupt act [of 1867 (14 Stat. 517)] does not contemplate a stay of proceedings by injunction on an order to show cause, issued out of a state court, why the bankrupt should not be punished for contempt for his failure to appear for examination on proceedings supplementary to execution.

[Cited in Clark v. Bininger, 38 How. Pr. 341.]

This was a motion to modify the injunction granted at the time of the filing of the petition restricting further proceedings before the county judge of Erie county on proceedings supplementary to execution. It appeared, that before the petition was filed in this court, the petitioner [Milo W. Hill] had (as alleged) committed a contempt in not appearing before the county judge, and an order had been made for him to show cause why he should not be punished. The injunction having been served upon the county judge, he doubted his right even to punish for contempt committed as alleged.

HALL, District Judge, said that he had some doubts whether the injunction as granted would stay the proceedings for contempt, but he did not consider that the bankrupt act contemplated a stay of such proceedings, and that he would grant the order modifying injunction as asked.

[1] [Reprinted by permission.]